IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MELISSA L.,[1]                                             No. 6:24-cv-608-HL

                Plaintiff,                    OPINION & ORDER

    v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                Defendant.

HALLMAN, Magistrate Judge:

       Plaintiff Melissa L. brings this action under the Social Security Act (the "Act"), 42

U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social

Security (the "Commissioner"). The Commissioner denied Plaintiff's application for Disability

Insurance Benefits ("DIB") and Social Security Income ("SSI") under Titles II and XVI of the

Act. 42 U.S.C. § 401 *et seq*. The Court has jurisdiction over this matter pursuant to 42 U.S.C. §

405. For the following reasons, the Commissioner's decision is AFFIRMED.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of
the nongovernmental party in this case.

**STANDARD OF REVIEW**

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter ... a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

**BACKGROUND**

I.    **Plaintiff's Application**

Plaintiff alleges disability based on the combined effects of her arthritis, scoliosis, psoriasis, a broken tailbone, and mental health symptoms stemming from bipolar, anxiety,

depression, and PTSD Tr. 274.[2] At the time of Plaintiff's alleged onset date, March 11, 2020, she

was 38 years old. Tr. 273. Plaintiff applied for DIB and SSI on April 28, 2021, alleging disability

beginning March 11, 2020. Tr. 256-63. Her applications were denied initially and on

reconsideration. Tr. 143-52, 159-66. Plaintiff subsequently requested a hearing, which was held

on June 20, 2023 before Administrative Law Judge (ALJ) B. Hobbs. Tr. 36-62. Plaintiff

withdrew her request for a hearing on the Title II claim, so the ALJ considered only Plaintiff's

Title XVI claim for SSI. Tr. 28-29. Plaintiff appeared and testified at the hearing, represented by

counsel. Tr. 36-62. On July 24, 2023, the ALJ issued a decision denying Plaintiff's claims. Tr.

17-35. Plaintiff requested Appeals Council review, which was denied on February 8, 2024. Tr. 1-

7. Plaintiff then sought review before this Court.[3]

## II.    Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability. *Howard v.*

*Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must

demonstrate an "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected ... to last for a continuous

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person

is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At

step one, the Commissioner determines whether a claimant is engaged in "substantial gainful

activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b),

416.920(b).

---

[2] Citations to "Tr." are to the Administrative Record, ECF No. 7.

[3] The parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. §
636. ECF 1.

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141. At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c).

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

### III.    The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 11, 2020, the alleged onset date. Tr. 23. At step two, the ALJ found Plaintiff had the following severe, medically determinable impairments: left knee arthritis; bilateral carpal tunnel syndrome; obesity; psoriasis vulgaris; psoriatic arthropathy; bipolar II; generalized anxiety disorder; and recurrent major depressive disorder. Tr. 23. At step three, the ALJ found no impairment met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 23. The ALJ assessed Plaintiff's residual functional capacity ("RFC"), as follows:

> to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb ramps, stairs, ladders, ropes, or scaffolds. She can frequently stoop, but only occasionally knee, crouch, or crawl. She can frequently handle or finger with the bilateral upper extremities. She can tolerate no wetness/humidity or extreme cold (as rated by the Dictionary of Occupational Titles). She can understand, remember, and carry out simple routine instructions involving no more than occasional interaction with co-workers, supervisors, or the public. She can deal with occasional changes in a routine work setting.

Tr. 24-25.

At step four, the ALJ determined that Plaintiff has no past relevant work. Tr. 27. At step five the ALJ determined that considering Plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that Plaintiff can perform, such as marker, housekeeping cleaner, and mail clerk. Tr. 28. The ALJ therefore found Plaintiff not disabled. Tr. 29.

### DISCUSSION

Plaintiff argues the ALJ committed three harmful errors. She contends the ALJ erred by (1) discounting her subjective symptom testimony without a clear and convincing reason for

doing so, (2) rejecting lay witness testimony without a germane reason, and (3) improperly

evaluating the medical opinion of Cynthia Dreyer, M.D. For the reasons that follow, the Court

finds the ALJ did not err, and affirms.

## I.    Symptom Testimony

Plaintiff first asserts that the ALJ improperly rejected her subjective symptom testimony.

Pl.'s Opening Br. at 3-9. This Court disagrees.

### A.    Legal Standards

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL

5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony

about the severity and limiting effect of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th

Cir. 2009). First, the claimant must produce objective medical evidence of one or more

impairments that could reasonably be expected to produce some degree of symptoms.

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the

impairment could reasonably be expected to cause the severity of the symptoms, but only show

that it could reasonably have caused some degree of the symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the

symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and

convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that

they do not credit and must explain what evidence undermines the testimony. *Holohan v.

Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In other words, the "clear and convincing"

standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir.

2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

### B.    Plaintiff's Testimony

At the administrative hearing, Plaintiff testified that she could not work because of issues with her hands, inability to stand for more than ten to fifteen minutes, and issues working with other people. Tr. 51. She lived with her husband and her father and provided "a little bit of care" for her father. Tr. 44. She experienced numbness, aching, cramping, and swelling in her hands. Tr. 44. She could hold onto objects for only a couple of minutes at a time. Tr. 44-45. She had dropped dishes. Tr. 45. She sometimes woke with excruciating pain and was unable to move her hands for ten or fifteen minutes. Tr. 45. She also had issues with her left knee; she was sometimes unable to bend or pivot the knee. Tr. 45-46. She wore braces and elevated her knee because of swelling. Tr. 46. She had been prescribed Methotrexate for psoriatic arthritis but was recently switched to Cosentyx due to elevated liver enzymes. Tr. 46-47. The Cosentyx had helped her psoriasis but not her psoriatic pain. Tr. 47. She experienced pustular psoriasis flares that caused swelling in her legs, feet, and ankles, and she was "pretty much in bed" until the swelling went down. Tr. 47. She also had plaque psoriasis that caused plaques from the bottom of her feet to her scalp. Tr. 47-48. They cracked and bled. Tr. 48. She spent her days cleaning as

much as she was able and mostly sitting in a recliner, reading or watching television with her father. Tr. 51-52.

Describing her mental health symptoms, Plaintiff testified to anxiety, anger, and manic episodes despite medication. Tr. 49. When describing her manic episodes, she stated, "My sleep isn't regular. Like sometimes I'll stay up for three or four days and then I'll sleep for like a week or my mood, I'll be fine and two minutes later I'll be ranting, raving not even knowing I switched." Tr. 49-50. Her anxiety usually turned into anger, which she did not know how to handle. Tr. 50. She stated, "I've never really been good around people and when it's like at a grocery store and there's a lot of people I tend to freak out then." Tr. 50.

In written testimony, she reported that she experienced pain in her lower back, knees, hands, and skin. Tr. 337. She could not stand for more than fifteen to twenty minutes at a time. Tr. 306, 329. She could lift no more than fifteen pounds. Tr. 306, 334. She could not "do anything with small objects" due to hand pain. Tr. 306; see also Tr. 329. She had swelling in the legs, ankles, and feet during psoriasis flares. Tr. 306; see also Tr. 329. She had anxiety when she "ha[d] to deal with people." Tr. 306. She experienced "a lot of anger" and sometimes could not get out of bed "for days" due to depression. Tr. 306. She took oil baths twice a day. Tr. 307, 330. She was able to prepare simple meals. Tr. 308, 331. She typically stayed at home and watched television daily. Tr. 310, 333. She struggled to maintain concentration to complete tasks. Tr. 334, 338. Her sleep was erratic and impacted by pain, racing thoughts, and depression. Tr. 330. She had difficulty with buttons and zippers. Tr. 330. She had been fired in the past because of problems getting along with others and physical altercations at work. Tr. 311, 334.

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her "statements concerning the

intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 25. Specifically, the ALJ discussed the objective medical evidence, Plaintiff's improvement with treatment, and her activities of daily living when discounting her subjective symptom testimony. Tr. 25-26. This Court addresses each rationale in turn.

### C.    Objective Medical Evidence

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle*, 533 F.3d at 1161; *see also Smartt*, 53 F.4th at 498 ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."). While an ALJ may also consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain," *Rollins*, 261 F.3d at 857, they cannot reject subjective pain testimony solely on that basis. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); see also 20 C.F.R. § 404.1529(c)(2) (the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). In sum, "an ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence 'fully corroborat[ing]' every allegation within the subjective testimony." *Smartt*, 53 F.4th at 498 (quoting *Burch*, 400 F.3rd at 681).

The ALJ reasonably discounted Plaintiff's allegations of limitations stemming from her knee and hand pain as inconsistent with the objective medical evidence. Conflict with objective medical evidence is a sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at

498; 20 C.F.R. § 416.929(c)(2). At the hearing, Plaintiff testified about hand and knee pain that affected her strength and mobility. *See* Tr. 44-47. Specifically, Plaintiff alleged she experienced numbness, aching, cramping, and swelling in her hands and had issues with her left knee; she was sometimes unable to bend or pivot the knee. Tr. 44-47. She alleged that as a result she could not stand for more than fifteen to twenty minutes at a time, lift more than fifteen pounds, or "do anything with small objects." Tr. 306, 329, 334. In contrast to Plaintiff's allegations, the ALJ cited medical records from June 2022 showing Plaintiff had a normal gait, normal range of motion, and moved all extremities symmetrically. Tr. 26 (citing Tr. 1191-92, 1255). The ALJ likewise noted that Plaintiff reported general body aches from psoriatic arthritis in October 2022, but she presented as pleasant and in no acute distress. Tr. 26 (citing Tr. 1183-86). Regarding Plaintiff's hand pain, the ALJ relied on records from May 2023 showing normal musculoskeletal function for her age, including normal strength and sensation, despite carpal tunnel syndrome symptoms. Tr. 27 (citing Tr. 1294-99). These records all conflicted with or showed a lack of support for Plaintiff's allegations of more significant limitations and amount to substantial evidence supporting the ALJ's decision to discount Plaintiff's testimony about the severity of her physical symptoms.

The ALJ also cited substantial evidence of medical records conflicting with Plaintiff's testimony about limitations stemming from her mental health impairments. The ALJ weighed Plaintiff's complaints of manic symptoms and being uncomfortable around people against other, contradictory evidence that undermined her allegations. Tr. 26, 68. For example, Plaintiff's counseling records from the relevant period indicate no abnormality in her appearance, motor skills, attitude, mood, affect, thought content, memory, concentration, or cognitive function. Tr. 26 (citing Tr. 1317-18). The ALJ cited several other medical records showing Plaintiff was alert

and oriented, with good eye contact, appropriate mood, and normal affect, speech, and thought process. Tr. 23-24 (citing  Tr. 1100, 1181, 1186, 1189,1192). The ALJ reasonably discounted Plaintiff's allegations of mental health symptoms, while still providing some limitations in her ability to function socially in the RFC, providing substantial evidence in support of his decision to do so.

The ALJ also reasonably relied on medical opinions that conflicted with Plaintiff's allegations when discounting her symptom testimony. Concerning Plaintiff's physical capabilities, the ALJ noted State agency medical consultant Thomas W. Davenport, M.D., determined that Plaintiff could sustain work at the light exertional level with manipulative limitations that limited her to frequent (but not constant) handling and fingering bilaterally (Tr. 95-96). At the reconsideration level in March 2022, Ramona Bates, M.D., assessed that Plaintiff could sustain light work, further restricted with postural limitations (frequent stooping and occasional climbing, balancing, kneeling, crouching, and crawling), manipulative limitations (frequent but not constant handling and fingering bilaterally), and environmental limitations (she should avoid concentrated exposure to extreme cold and wetness). Tr. 125-27. So too with the medical opinions about Plaintiff's mental health. State agency psychological consultants assessed that Plaintiff could, sustain work involving "short and simple" instructions and no more than occasional public contact. Tr. 27, 94-97, 123-28. The ALJ explained that his proposed restriction to short and simple tasks deviated slightly from the "simple work-related decisions" found in the prior ALJ decision, and updated his RFC by restricting Plaintiff to a range of simple routine tasks. Tr. 27, *compare* Tr. 94- 97, 123-28 *with* Tr. 70. The ALJ reasonably incorporated these medical consultants' findings and opinions into his RFC—which Plaintiff does not challenge on appeal—and they were further substantial evidence supporting the ALJ's decision

to discount Plaintiff's testimony to the extent it conflicted with those opinions. *See* Pl. Br., Tr. 24-25.[4]

Plaintiff urges the Court to adopt a different interpretation of the record, but does not undermine the substantial evidence supporting the ALJ's decision. Plaintiff particularly challenges the ALJ's considerations of her alleged hand pain and limitations flowing from that pain. Pl. Reply at 4-5. Specifically, Plaintiff argues the ALJ relied on manipulative limitations from medical opinions that predate her May 2023 nerve conduction study and carpal tunnel diagnosis. Pl. Reply at 5. Plaintiff emphasizes that these medical records accord with Dr. Dreyer's opinion regarding Plaintiff's handling and fingering limitations. *Id.* But the ALJ reasonably considered the nerve conduction study, contrasted it to other evidence suggesting "normal" levels of strength and sensation, and discounted Plaintiff's alleged limitations. Tr. 27. Plaintiff's arguments about these hand-related limitations are an effort to have this Court re-weigh the evidence, which is beyond the scope of review. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("We may not reweigh the evidence or substitute our judgment for that of the ALJ."). Even when there are two reasonable interpretations—plaintiff's and the ALJ's—the ALJ's interpretation must prevail. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld."). Against that backdrop, even though Plaintiff clearly interprets

---

[4] The ALJ also discounted Plaintiff's subjective symptom testimony regarding her mental health symptoms because it was inconsistent with her own statements about daily activities. Tr. 24. The Court need not resolve whether the ALJ supported this basis with substantial evidence. Any error in considering Plaintiff's activities of daily living is harmless because the ALJ identified another sufficient basis to discount her mental health symptom testimony. *See Molina*, 674 F.3d at 1115 (holding ALJ's error "harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record").

the evidence differently, she has not (and cannot) establish error by simply advancing a different interpretation of the medical evidence. The ALJ's conclusion "showed his work," and was supported by substantial evidence, so the Court will not disturb it on this basis.

### D.     Improvement with Treatment

The ALJ rejected Plaintiff's testimony concerning her psoriatic flairs in part because the evidence demonstrated improvement with treatment.  Tr. 26. An ALJ may also reject a claimant's symptom testimony if that testimony is contradicted by evidence of improvement in the medical record. *Carmickle*, 533 F.3d at 1161. If the record shows a claimant's symptoms have improved with treatment, that improvement is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The Ninth Circuit has held that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017).

The medical records the ALJ cited showed medication helped Plaintiff's psoriatic symptoms, and this was a clear and convincing reason to discount her symptom testimony. The ALJ noted that with appropriate medication, Plaintiff's psoriatic skin condition improved "dramatically." Tr. 26, 1259. Plaintiff stopped taking her medication after seeing improvement, which resulted in the return of psoriasis plaques in mid-2022. Tr. 26, 1257. After restarting her medication, Plaintiff described that she felt "fine" and denied having any issues. Tr. 26, 1191. Plaintiff's clinical presentation likewise showed her as pleasant, alert, oriented, and in no acute distress. Tr. 26, 1191-92. As a result of treatment, the "[p]soriasis has near completely resolved." Tr. 1279. During the hearing, Plaintiff acknowledged that she had not had a psoriatic flare in the prior six months. Tr. 25, 47. The ALJ appropriately considered the evidence when he determined

that Plaintiff's symptoms were manageable with appropriate medications, and this was another

clear and convincing basis to discount Plaintiff's symptom testimony.

## II.    Lay Witness Testimony

Plaintiff next asserts that the ALJ improperly rejected lay witness testimony—a report

from Plaintiff's partner—without providing germane reasons for doing so. Pl. Br. at 12-14. This

Court agrees, but finds the ALJ's error was harmless.

### A.    Legal standards

Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must

take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20

C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("In evaluating the intensity and persistence of your

symptoms, we consider all of the available evidence from your medical sources and nonmedical

sources about how your symptoms affect you."). Under the 2017 regulations, the ALJ is not

"required to articulate how [they] considered evidence from nonmedical sources" using the same

criteria required for the evaluation of medical sources. 20 C.F.R. §§ 404.1520c(d), 416.920c(d).

The ALJ must give reasons "germane to the witness" when discounting the testimony of

lay witnesses. *Valentine*, 574 F.3d at 694.[5] But the ALJ is not required "to discuss every

witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114,

---

[5] Citing the revised regulations for medical source opinions and the Ninth Circuit's unpublished opinion in *Fryer v. Kijakazi*, 2022 WL 17958630, at *3 n.1 (9th Cir. Dec. 27, 2022), the Commissioner argues that the ALJ is no longer required to provide "germane reasons" for discounting lay witness testimony. Def. Br. 8-9. The Ninth Circuit, in a recent unpublished opinion, noted that it remains "an open question whether the new regulations affect the longstanding requirement in the Ninth Circuit that an ALJ must give germane reasons for rejecting lay witness testimony." *Jarrett v. O'Malley*, No. 23-3565, 2024 WL 4707890, at *3 (9th Cir. Nov. 7, 2024). Absent further guidance from the Ninth Circuit, this Court disagrees that the new regulations provide a basis to reject the Ninth Circuit's longstanding precedent concerning "germane reasons." *See Donna B.S. v. O'Malley*, No. 6:22-CV-1571-SI, 2024 WL 3534431, at *7 (D. Or. July 25, 2024) (so holding).

*superseded on other grounds by* 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id.* Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id.* at 1117, 1122.

### B.    Analysis

The lay witness testimony in this case mirrored Plaintiff's own testimony about her symptoms. Plaintiff's partner described mental and physical health-related limitations that tracked Plaintiff's own allegations. *Compare* Tr. 44-47 (Plaintiff's testimony) *with* Tr. 298-304 (Plaintiff's partner's testimony).

The ALJ did not provide any reason, let alone a germane one, for disregarding Plaintiff's partner's testimony, and therefore erred. Tr. 54. This error was harmless, however. As noted, Plaintiff's partner alleged similar limitations regarding Plaintiff's mental and physical limitations, and as discussed above, the ALJ provided legally sufficient reasons for concluding that plaintiff's testimony was unpersuasive. These reasons apply with equal force to the lay witness testimony. Any error in rejecting the lay witness testimony was therefore harmless. *Molina,* 674 F.3d at 1117, 1122.

## III.    Medical Opinion Evidence

Plaintiff also argues the ALJ did not properly consider Cynthia Dreyer, M.D.'s medical opinion. Pl. Br., ECF No. 11 at 9-12. For claims filed on or after March 27, 2017, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. 20 C.F.R. § 404.1520c. Instead, the agency considers several factors. 20 C.F.R. § 404.1520c(a).

These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. § 404.1520c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

Under this framework, the ALJ must "articulate ... how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. § 404.1520c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R § 404.1520c(b)(2). The supportability and consistency factors require ALJs to consider the persuasiveness of a medical opinion based on how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support her or her medical opinion," and its consistency with other sources. 20 C.F.R. § 404.1520c(c)(1-2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

In April 2023, Dr. Dreyer reported in a written statement that she had been treating Plaintiff since June 2018 and currently saw her every one to three months. Tr. 1245. Plaintiff's diagnoses included psoriasis and psoriatic arthritis, both of which were lifelong conditions. Tr. 1245. Her symptoms included pain in her hands, knees, and back. Tr. 1246. Her treatment had included Humira, Methotrexate, Taltz, and Cosentyx. Tr. 1247. Dr. Dreyer opined that Plaintiff needed to rest for about twenty minutes after an hour of labor. Tr. 1246. She was unable to walk

a city block without rest or significant pain. Tr. 1247. She could sit for ten minutes at a time and three hours total in an eight-hour workday. Tr. 1247. She could stand/walk for five minutes at a time and three hours total in an eight-hour workday. Tr. 1247. She needed a job that permitted shifting positions at will from sitting, standing, or walking. Tr. 1247. She would need to take an unscheduled twenty-minute break every hour during an eight-hour workday. Tr. 1248. She could lift/carry no more than ten pounds occasionally. Tr. 1248. She could perform bilateral handling and fingering for up to 5% of an eight-hour workday. Tr. 1248. She would need to take a break after using her hands to perform handling or fingering activities. Tr. 1248. She would be absent more than four workdays per month because of her conditions. Tr. 1249.

The ALJ considered Dr. Dreyer's medical opinion and rejected it as unpersuasive. Tr. 27. The ALJ found Dr. Dreyer's opinion largely "align[ed] with the claimant's subjective complaints, but diverge[d] significantly from the claimant's recent clinical presentation." *Id.*

The ALJ adequately discussed the strength of the evidence underlying Dr. Dreyer's opinions in the record and its inconsistency with other evidence when finding it unpersuasive. Tr. 27. The ALJ specifically highlighted Dr. Dreyer's opinion that Plaintiff's "chronic pain symptoms render her physically incapable of sustaining even sedentary tasks – as she would be unable to sit, stand, or walk for a full 8-hour workday." Tr. 27. The ALJ discounted Dr. Dreyer's opinion because its extreme limitations were not supported by her own treatment records. Tr. 27. The ALJ started by noting that several of Dr. Dreyer's opinions conflicted with her own observations. For example, Dr. Dreyer's records show that she modified Plaintiff's medication regimen as necessary, which improved her skin condition "dramatically." Tr. 26-27 (citing Tr. 1251-60). With the right medication, Plaintiff's psoriasis reportedly felt "fine" and she denied having any issues. Tr. 26, 1191. The ALJ also discussed how Dr. Dreyer's opined limitations

conflicted with other record evidence. For example, medical records showed that Plaintiff's

psoriasis improved with treatment, and that by January 2023, Plaintiff had a normal gait and

normal range of motion of the extremities with no edema. Tr. 26 (citing Tr. 1012, 1181). The

ALJ reasonably found these several normal findings and lack of objective medical evidence

undermined Dr. Dreyer's assessment of extreme limitations. In doing so, the ALJ sufficiently

considered the supportability and consistency of Dr. Dreyer's medical opinion when concluding

it was poorly supported by explanation and objective medical evidence.[6]

## CONCLUSION

For the reasons given above, the Commissioner's decision is AFFIRMED.

DATED this 7th day of March, 2025.

_____

ANDREW HALLMAN
United States Magistrate Judge

---

[6] Plaintiff also contends the ALJ's analysis of Dr. Dreyer's opinion runs afoul of the Ninth Circuit's expectation that ALJs analyze a claimant's disability for the full adjudicatory period, rather than just at one particular moment in time. Pl. Br.at 10-11 (citing *Smith v. Kijakazi*, 14 F.4th 1108, 1113 (9th Cir. 2021)). In short, Plaintiff argues it was error to rely on medical records from 2022-23, even though she alleged disability beginning March 11, 2020. *Id.* Dr. Dreyer's opinion was written in April of 2023, however, and she phrases her limitations in the present tense. Tr. 1248-49. It was reasonable for the ALJ to compare these opinions to Plaintiff's other recent medical records. *See* Tr. 26-27. Nor does Plaintiff identify what pre-2022 evidence the ALJ ought to have specifically considered. *See* Pl. Br at 10-11. The Court therefore finds no error in the ALJ's reliance on records from this period.